427 So.2d 827 (1982)
STATE of Louisiana
v.
Darryl CLAYTON and Joann Isom.
Nos. 82-KA-0730, 81-KA-1514.
Supreme Court of Louisiana.
September 7, 1982.
On Rehearing February 23, 1983.
Rehearing Denied March 25, 1983.
*828 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, John Craft, Richard Petre and William Campbell, Asst. Dist. Attys., for plaintiff-appellee.
John M. Lawrence, Orleans Indigent Defender Program, O.I.D.P., John J. Dolan, New Orleans, for defendant-appellant.
CARTER, Justice Ad Hoc.[*]
The defendants, Darryl Clayton and Joann Isom, were charged by grand jury indictment with second degree murder of Sharon Heim, in violation of R.S. 14:30.1. They were tried by a twelve member jury on March 26, 1981, and found guilty as charged. The verdict against Clayton was unanimous; the verdict against Isom was divided, ten to two. Thereafter, both defendants filed motions for new trials, alleging inter alia the existence of new evidence. The first motions for new trial were heard on April 13, 1981 and were denied by the trial court. On April 20, 1981, both defendants were sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. While the appeals were pending, both defendants filed second motions for new trial again alleging the existence of new evidence. We remanded the case and directed an evidentiary hearing be held on the second motions for new trial. The motions were heard on February 24, 1982, and the defendants' motions for new trial were denied.
While this appeal was pending, defendant, Joann Isom died. Thus, the proceeding against her is abated.State v. Hamilton, 370 So.2d 874 (La.1979); State v. Ferina, 351 So.2d 1200 (La.1977); State v. Morris, 328 So.2d 65 (La.1976).
With respect to defendant Clayton, defendant specified five assignments of error before the trial court, but has withdrawn or abandoned assignments of error no. 1 and no. 4, leaving three remaining assignments of error as follows:
(1) That the trial judge erred in admitting into evidence State exhibits Nos. 5 and 6 (photographs of a door showing an alleged bullet hole.)
(2) That the trial court erred in refusing to allow defense counsel to question defendant Isom regarding a prior altercation between Isom and Lewis Johnson;
(3) That the trial court erred in denying his motions for new trial.
*829 We find that the third assignment of error has merit.
On the trial of the merits, Keith Draughn, the brother of the deceased victim, testified that on the evening of December 23, 1980, he heard Joann Isom and Lewis Johnson argue. Joann left and came back with Darryl Clayton. Draughn stated that Lewis Johnson was standing with a bat in his hand, but did not attempt to hit anyone. Darryl Clayton asked Johnson something which Draughn could not hear, Clayton then pulled out a gun and shot Johnson in the shoulder.
Draughn further testified that Sharon Heim, who lived with Johnson, came running out of the door to her apartment. She was running toward Johnson when Joann Isom said to Clayton, "shoot that bitch, Sharon for me." Clayton then turned around and shot Sharon as she was coming down the stairs. According to Draughn, Sharon was unarmed. Draughn stated that Clayton fired a third shot at him and his little niece; the shot missed and hit the door to one of the apartments.
Henrine Brown, a friend of Sharon Heim's sister, testified that she heard Lewis Johnson and Joann Isom arguing about money. Johnson told Isom to pay him $60.00, and Isom responded that she did not owe him $60.00. Isom then left and returned with Darryl Clayton. Henrine Brown's testimony on the trial was the same as Keith Draughn's, with one exception: Henrine Brown stated that Lewis Johnson "raised back with the bat" and "was getting ready to hit Darryl Clayton with the bat," when Clayton fired the first shot. She also claimed that she heard Joann Isom tell Clayton to "shoot that `B' too," and that Sharon Heim was unarmed. Henrine Brown stated that she ran into Sharon's apartment after the shooting. Sharon ran back inside after being shot and collapsed on the floor. On the trial, Henrine Brown testified that she saw no gun or knife near Sharon's body.
Defense witness Ida Mae Smith, Joann Isom's aunt, said that she received a telephone call from Henrine Brown on the night of the shooting. Ms. Brown mistook Ida Mae Smith for Sheila Heim, Sharon Heim's sister and a friend of Ms. Brown's, and said "Sheila, get to the hospital as fast as you can. Sharon done got shot. Don't worry because I have the money, the sets, and the knife. You just get to the hospital." Ida Mae Smith then informed Henrine Brown that she was not Sheila, to which Henrine Brown replied, "Oh, I made a mistake." Darryl Clayton and Joann Isom both testified that Johnson tried to strike Clayton with the bat before Clayton shot him. Also, both defendants claimed that Sharon Heim was running toward Clayton with a knife when Clayton fired the shot at her and that Clayton fired only two shots and did not fire at Keith Draughn. Sharon Heim died several hours after the shooting of a gunshot wound to the chest.
At the first hearing on defendant's first application for new trial based on newly discovered evidence, defendant produced Freddie Johnson (unrelated to Lewis Johnson) who testified that he witnessed the incident from about a block away. Freddie Johnson testified that he saw one fellow swing a bat and then heard a shot. He then saw "a lady running out of the door screaming with both her hands in the air and she had some kind of object in her hand... she started toward the other guy and at that time I heard another scream, then another shot." Defendant Clayton contends that Freddie Johnson was the only unbiased independent witness to the shooting and that consequently his testimony would probably have changed the verdict from guilty.
On the second evidentiary hearing to determine whether or not the defendant should be granted a new trial based on newly discovered evidence, Henrine Brown changed her testimony completely. At this hearing, Henrine Brown recanted her previous trial testimony with reference to the actions of Sharon Heim at the time of the shooting. Henrine Brown testified that "Sharon Heim had a knife in her hand at the time of the murder." An almost identical *830 assertion had been made in a letter to defendant Darryl Clayton, which letter was introduced at the hearing along with an envelope showing a postmark of December 7, 1981. This testimony of Henrine Brown at the evidentiary hearing was in direct contradiction to her testimony given before the grand jury and at the trial on the merits. At the trial on the merits, Henrine Brown was specifically asked, "Did Sharon have a knife in her hand?", to which she replied, "No". Apparently this was the same testimony that she had given before the grand jury. Henrine Brown claimed that the reason for her failure to bring forth the information regarding the presence of the knife was because of verbal threats that had been made against her by the victim's family prior to the trial. The trial court noted that this change in the witness's testimony was almost a year after the incident and that Henrine Brown had been incarcerated at the same prison facility with the defendant since August 25, 1981.
At trial, the defense of Clayton was primarily based upon justifiable homicide by self defense, alleging that Clayton shot the victim because she ran at him armed with a knife in her hand. The testimony from Henrine Brown bears directly on the issue of self-defense and is corroborated by the testimony of Freddie Johnson who testified in the first hearing on the motion for new trial. This testimony is further corroborated by a defense witness who did testify at the trial, namely Ida Mae Smith, Joann Isom's aunt. Ida Mae Smith had testified on the trial that Henrine Brown had called her and told her not to worry because she had "the money, the sets, and the knife."
La.Code Criminal Procedure art. 851(3) dictates that the court, on motion of defendant, shall grant a new trial whenever:
"(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available and if the evidence had been introduced at the trial, it would probably have changed the verdict or judgment of guilty."
This court has consistently held that the trial judge is accorded considerable discretion in evaluating the impact of newly discovered evidence on the verdict and its reliability, and its ruling will not be disturbed on appeal absent a clear showing of abuse of discretion.
In considering a motion for new trial based on newly discovered evidence, the test to be employed is not whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Naas, 409 So.2d 535 (La.1981), on rehearing, 409 So.2d 542; State v. Williams, 362 So.2d 530 (La.1978); State v. Lovett, 359 So.2d 163 (La.1978); State v. Tyler, 342 So.2d 574 (La.1977); State v. Provost, 352 So.2d 661 (La.1977); State v. Linkletter, 345 So.2d 452 (La.1977).
This court has further consistently held that recantations of trial testimony should be looked upon with the utmost suspicion. State v. Linkletter, supra; State v. Tyler, supra. Further, a recantation at a new trial is a confession to perjury which destroys the credibility of the witness. State v. Linkletter, supra.
Review of the newly discovered evidence relied on by the defense in both the original evidentiary hearing and the second evidentiary hearing, convinces the court that the evidence adduced at either of the hearings, if considered alone, would not have entitled the defendant to a new trial. Henrine Brown's testimony on the second new trial hearing would be looked upon with the utmost suspicion and a new trial should not be granted on the grounds that the newly discovered evidence destroys the credibility of the state's witness. State v. Tyler, supra; cf. State v. Brandle, 187 La. 945, 175 So. 628 (1937); State v. Bates, 140 La. 833, 74 So. 165 (1917), overruled on other grounds.
Additionally, the testimony of Freddie Johnson, adduced on the original application for new trial, if taken alone, would not be such testimony that would probably have changed the jury's verdict. However, considering *831 all of the testimony adduced at all evidentiary hearings on motions for new trial, we cannot say that the evidence was not of such materiality that it would not have probably produced a different result than the verdict reached. The testimony of Freddie Johnson, which corroborated Henrine Brown's recanted version, when considered with the testimony of Joann Isom and Ida Mae Smith, who testified on behalf of the defense (on the trial), was such evidence that would have cast serious doubt upon the credibility of Keith Draughn, the state's remaining primary witness. The totality of this new evidence would probably have changed the verdict or judgment of guilty. C.Cr.P. art. 851(3). We therefore conclude that the trial judge erred in denying defendant Clayton's motion for new trial. Having thus concluded, it is unnecessary to consider defendant's other assignments of error.
Accordingly, as to defendant Joann Isom, the appeal is dismissed, the judgment of conviction is vacated, and the case is remanded to the district court with instructions to dismiss the indictment.
As to defendant Clayton, for the above reasons, we hold that the trial court should have granted defendant's second motion for a new trial and accordingly the conviction is reversed and the case is remanded for new trial.
AS TO DEFENDANT ISOM, CONVICTION VACATED AND REMANDED WITH INSTRUCTIONS TO DISMISS INDICTMENT.
AS TO DEFENDANT CLAYTON, REVERSED; REMANDED, NEW TRIAL ORDERED.
MARCUS, J., dissents.

ON REHEARING
BLANCHE, Justice.
Defendants Darryl Clayton and Joann Isom were convicted of second degree murder for the shooting death of Sharon Heim, a violation of LSA-R.S. 14:30.1. While her appeal was pending (81-KA-1514), Joann Isom died of natural causes, and all proceedings against her have abated. State v. Hamilton, 370 So.2d 874 (La. 1979). Defendant Clayton was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence and now urges three of the five assignments of error he filed with the trial court.
On our initial review of this case, we reversed the conviction of the defendant on the grounds that the trial court had denied improperly his motion for a new trial. The motion was based on the grounds that a key state witness, Henrine Brown, had recanted her earlier testimony and would testify at a new trial that the victim, Sharon Heim, advanced on the defendant with a knife and that he shot her in self-defense. After careful consideration on rehearing, we must reverse our original finding, and in so doing, we affirm the conviction and sentence imposed by the trial court.
A brief review of the facts and procedural history of this case is necessary: On the evening of December 23, 1980, at around 6:00 p.m., Joann Isom and Lewis Johnson were engaged in a heated argument outside of Johnson's apartment in a New Orleans, Louisiana public housing project. Apparently, Johnson claimed that Isom owed him $60, a debt which Isom denied. Isom left the scene and returned with the defendant, who was armed with a .38 caliber pistol. Johnson stood outside of the apartment with a baseball bat held at his side. The defendant asked Johnson something then shot him in the upper shoulder near his spine. As the shot was fired, Isom told Johnson to "take that." The victim, Sharon Heim, who lived with Johnson, upon hearing the shot, came running out of the apartment toward the place where Johnson lay on the ground. Isom shouted, "Shoot that bitch, Sharon, for me!" and the defendant shot Sharon in the chest. Sharon ran back inside, where she collapsed and later died. Johnson recovered but remains paralyzed from the waist down.
Two eyewitnesses to the shooting, Keith Draughn and Henrine Brown, both testified at trial as to the above enumerated facts.
*832 Both testified that Sharon Heim was not armed. The only inconsistency in their accounts was Henrine's assertion that Johnson had raised the bat as if to strike the defendant when he was shot. The defendant and Isom had both claimed that Johnson was about to swing the bat when he was shot and that Sharon came at them with a knife. The alleged knife was never recovered.
On April 13, 1981, after an evidentiary hearing, the trial court denied the defendant's motion for a new trial. On original appeal, we remanded the case to the trial court for a second evidentiary hearing to consider the new testimony of Henrine Brown. State v. Clayton, (La.1981) (81-KA-1514). Following this second evidentiary hearing on February 24, 1982, the motion was again denied.
At the first hearing, a man named Freddie Johnson, a friend of Joann Isom's cousin but no relation to Lewis Johnson, testified that he had witnessed the incident from a block away. He stated that Lewis Johnson raised the bat just before he was shot. He then saw "a lady running out of the door screaming with both her hands in the air and she had some kind of object in her hand... she started toward the other guy ..."
At the second hearing, Henrine Brown recanted the testimony she had given at trial. Henrine testified that Sharon had a knife in her hand at the time of the shooting. She claimed that she had not testified as to that fact at trial because Sharon's family had threatened her.

ASSIGNMENT OF ERROR NO. 5
By this assignment, the defendant argues that the trial court erred in denying his motion for a new trial following the second evidentiary hearing. More specifically, he urges that the trial judge abused the great discretion afforded him in such matters by failing to find the "newly discovered evidence" sufficient to warrant a new trial.
La.C.Cr.P. art. 851 provides the standard of review by which we determine whether a trial judge has erred in denying a motion for a new trial. Art. 851 provides specifically:
"The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty;"
* * * * * *
The burden is on the defendant to show that the new evidence was not discoverable prior to or during trial and that if the evidence had been introduced at trial, the new evidence probably would have caused the trier of fact to reach a different verdict. State v. Coleman, 390 So.2d 865 (La.1980).
The trial judge is afforded considerable discretion in evaluating the impact of newly discovered evidence, and his denial of a motion for a new trial will not be disturbed on appeal absent a clear abuse of that discretion. State v. Talbot, 408 So.2d 861 (La.1981) (on rehearing); State v. Spell, 399 So.2d 551 (La.1981). In evaluating whether the newly discovered evidence warrants a new trial, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a verdict different from that rendered at trial. State v. Molinario, 400 So.2d 596 (La.1981); State v. Bagley, 378 So.2d 1356 (La.1979); State v. Williams, 362 So.2d 530 (La.1978). Recantations of trial testimony should be looked upon with the utmost suspicion. We have held specifically that a motion for a new trial should not be granted on the basis of a recantation because it is tantamount to an admission of perjury which would destroy *833 the credibility of the witness at a new trial. It is not an abuse of discretion on the part of the trial court to refuse to grant a motion urged on such a basis. State v. Spell, supra; State v. Linkletter, 345 So.2d 452 (La.1977), cert. denied, 434 U.S. 1016, 98 S.Ct. 733, 54 L.Ed.2d 760; State v. Tyler, 342 So.2d 574 (La.1977), cert. denied, 431 U.S. 917, 97 S.Ct. 2180, 53 L.Ed.2d 227.
Without unduly minimizing the testimony of alleged witness Freddie Johnson, we note that our opinion on original hearing ordered the motion for new trial granted primarily on the basis of Henrine Brown's recantation of her trial testimony. After careful review on rehearing, we are now of the opinion that we erred in according any weight whatsoever to her new testimony. Accordingly, we are now of the view that the trial court did not clearly abuse its great discretion in denying the motion for a new trial. In so finding, we have determined that the defendant has not demonstrated the existence of any new evidence of such materiality that it ought to produce a verdict different from that rendered at trial.
At trial, Henrine Brown testified that she heard Lewis Johnson and Joann Isom arguing about money. Johnson demanded that she "pay him $60," and Isom refused. She left the scene and returned with the defendant, who was armed with a gun. Henrine stated that Johnson "raised back with the bat" as though to strike the defendant when he was shot. Her testimony was virtually identical to that of Keith Draughn, with the exception that Draughn testified that Johnson had held the bat at his side when he was shot. Both testified unequivocally that Sharon Heim was unarmed when she ran from the apartment. Henrine's testimony at trial was identical to her testimony before the grand jury which indicted the defendant. Suddenly, nearly one year following the incident, Henrine changed her story. During most of that time, she had been incarcerated in the same prison facility as the defendant, though in separate male-female areas.
The coincidences are too convenient to ignore, and we cannot view Henrine's new testimony as anything except incredulous. In short, her testimony is simply too suspicious to be believed. Nearly a year passed before she finally decided to "come clean." She and the defendant had been housed in the same prison facility during most of that year. Her recantation coincided conveniently with the appearance of Freddie Johnson, an acquaintance of Joann Isom, who stated that he had seen Sharon, from the distance of a city block away, running from the apartment with an "object" in her hand. Henrine's testimony was directly contradictory to the testimony which she had given twice before and which had been corroborated by another eyewitness. Under these circumstances, we must discount her new testimony as simply unbelievable. Accordingly, this court erred in attaching any weight to it on original hearing.
As to Freddie Johnson's testimony that he had seen Sharon running from the apartment with an "object" in her hand, we stated on original hearing that this testimony, taken alone, was not such that it would have "probably" caused the jury to return a different verdict within the meaning of La. C.Cr.P. art. 851. We agree with that assessment, but now regard the proper test to be whether his testimony is of such materiality that it ought to produce a verdict different from that rendered at trial. Assuming, arguendo, that Freddie Johnson would have testified at the original trial as he had at the hearing on the motion for a new trial, his story would have been directly contradicted by the two eyewitnesses, Draughn and Henrine. The shooting occurred at about 6:00 p.m. on December 23, and there was testimony that it was very close to dark at that time. Given the extreme distance from which he was alleged to have viewed the transaction, it is highly improbable that the jury would have accorded his testimony any significant weight.
Therefore, for these reasons, it has not been demonstrated that the trial court clearly abused its great discretion in denying the defendant's motion for a new trial. Henrine's recantation must be viewed with the utmost suspicion. Since her new testimony is not worthy of belief, Freddie Johnson's *834 testimony, taken alone, is not so material that it ought to produce a verdict different from that rendered at trial. La.C. Cr.P. art. 851; State v. Molinario, supra.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment, the defendant urges that the trial court erred in admitting into evidence two photographs of an alleged bullet hole in the door of Lewis Johnson's apartment. Specifically, the defendant argues that the photographs were not taken by the state until the day before trial (more than three months after the incident), that the police did not discover the existence of the hole until the day after the incident, that no bullet was recovered from the hole, and that no expert testified as to the size of the gun which had caused the hole or as to when the hole had been made. The defendant argues further that the state failed to lay a proper foundation for admission of the photographs and that, at any rate, the evidence was too remote to be relevant.
Our review of the record shows that the defendant stated none of these grounds as the basis for his objection at the time it was made. In fact, he did not urge any particular ground at all. It is well-founded in our law that the grounds for an objection must be stated at the time the objection is made, and grounds therefor may not be urged for the first time on appeal. La.C. Cr.P. art. 841; State v. Green, 390 So.2d 1253 (La.1980); State v. Johnson, 389 So.2d 372 (La.1980); State v. Woodard, 387 So.2d 1066 (La.1980); cf. Tyler v. Phelps, 643 F.2d 1095 (5th Cir.1981).
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment, the defendant argues that the trial court erred in refusing to allow defense counsel to question Joann Isom regarding a prior altercation between her and state witness Lewis Johnson. More specifically, the defendant urges that such evidence was relevant to his state of mind in that it gave him a reason to expect an impending attack from Johnson.
Where the defense urged is one of self-defense, evidence of prior acts of violence by the victim against the accused is relevant to prove the accused's reasonable belief that he was in imminent danger of death or great bodily harm and that his defensive action was necessary to save himself. LSA-R.S. 15:482; State v. Edwards, 420 So.2d 663 (La.1982); State v. Sam, 412 So.2d 1082 (La.1982); State v. Thibeaux, 366 So.2d 1314 (La.1978). Here, however, the defendant was on trial for the killing of Sharon Heim and not Lewis Johnson. Further, the alleged acts of violence were supposed to have been committed by Lewis Johnson upon Joann Isom. Such testimony would not have been relevant to prove the defendant's state of mind as to Sharon Heim at the time of the killing. Therefore, the trial court did not clearly abuse its much discretion regarding the relevancy of evidence by refusing to admit such testimony. LSA-R.S. 15:441, 442; cf. State v. Bates, 397 So.2d 1331 (La.1981); State v. Brown, 395 So.2d 1301 (La.1981); State v. Stramiello, 392 So.2d 425 (La.1980).
This assignment is without merit.

DECREE
For the foregoing reasons, the opinion of this court on original hearing is hereby recalled, and the conviction and sentence of the defendant, Darryl Clayton, are affirmed. All proceedings against Joann Isom abated on her death.
REVERSED; CONVICTION AND SENTENCE AFFIRMED.
DENNIS, J., concurs with reasons.
CALOGERO, J., dissents for the reasons expressed by the majority on original hearing.
DENNIS, Judge, concurring.
I respectfully concur.
The majority opinion incorrectly states the rule for determining whether a new trial should be granted. Article 851 of the Louisiana Code of Criminal Procedure provides in pertinent part,
The court, on motion of the defendant shall grant a new trial whenever: * * *
(3) New and material evidence that notwithstanding the exercise of reasonable *835 diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; * * *
The language of the provision conforms with the corresponding provision of Section 364 of the American Law Institute Code of Criminal Procedure and clearly indicates that the standard to apply is whether the newly discovered evidence would probably have changed the verdict if it had been introduced. See La.C.Cr.P. art. 851, Official Revision Comment d. As we declared in State v. Talbot, 408 So.2d 861, 885 (La. 1981) (On rehearing), it is this statutory standard which must apply and not some court's private opinion of what the statute ought to be.
The evidence is more favorable to the defendant than the majority opinion may indicate. Henrine Brown testified unequivocally at the second evidentiary hearing that the victim "had a knife in her hand at the time of the murder." A letter written by Brown before the time of this hearing bolstered her claims that the victim was armed at the time of the shooting. Testimony at trial suggested that Brown may have admitted in a telephone conversation to taking the knife from the injured victim.
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter and Felix H. Savoie, Jr. of the First Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc, joined by Chief Justice Dixon and Associate Justices Calogero, Marcus and Dennis.