CHEHARDY, C.J.
| defendant, Tommy L. Mouton, appeals his conviction and sentence for one count of failure to register as a sex offender, second offense, in violation of La. R.S. 15:542. For the following reasons, we affirm defendant’s conviction and sentence. Finding an error patent, we remand the matter for correction of the commitment and uniform commitment order. '
STATEMENT OF THE CASE
On March 20, 2015, the State charged defendant by bill of information with one count of failure to register as a sex offender, second offense, in violation of La. R.S. 15:542. On March 23, 2015, the district court arraigned defendant on this- charge, and defendant entered a plea of not guilty. Following a jury trial, the jury rendered a unanimous verdict of guilty on March 24, 2016, Thereafter, on June 9, 2016, defendant filed a motion for new trial and for post-verdict judgment of acquittal, arguing that the jury’s verdict constitutes a violation of the Fourteenth Amendment of the United States Constitution because it was impossible for defendant to comply with the law due to his indigency. On June 10, 2016, the district court denied defendant’s motion and sentenced defendant to twenty years imprisonment at hard labor without benefit of probation; parole, or suspension of sentence. That day, defendant filed a motion for appeal and a motion to reconsider sentence on the grounds that- the sentence is constitutionally excessive. On June 13, 2016, the district court denied defendant’s motion to reconsider and granted defendant’s motion for appeal. Defendant’s appeal followed.
FACTUAL AND PROCEDURAL HISTORY
This appeal arises from defendant’s conviction and sentence for failure to register as a sex offender, second offense, a conviction that, among other things, requires proof of previous sex offense convictions. Defendant’s sex offender status arose from three 1990 convictions. On October 1,1989, the State charged ^defendant by bill of information with one count of aggravated oral sexual battery, one count of indecent behavior with a juvenile, and one count of sexual battery on a child younger than eighteen. The 1989 bill of information reflects that these charges all related to sexual conduct which occurred at some time over an almost four year period— from January 18, 1986 through October 1, 1989—with the same female victim, who was between the ages of seven and ten during the relevant times. Defendant was between the ages of thirty-two and thirty-six at that time. On November 26, 1990, the district court, in Case No. 90-714, Twenty-Fourth JDC, Division “F,” accepted defendant’s guilty pleas on these three counts and sentenced defendant to ten years at hard labor on the aggravated oral sexual battery conviction, ten years at hard labor on the sexual battery on a child conviction, and seven years at hard labor on the indecent behavior with a juvenile conviction, with the sentences on these convictions to run concurrently.
*1247 At some time during his incarceration for these convictions, prison authorities apparently discovered a journal in defendant’s cell containing several dozen prurient and pornographic drawings of female girls of various ages as well as detailed instructions for targeting, kidnapping, raping, and murdering children of various ages. The record in the instant matter contains these illicit drawings and journal entries. Defendant admitted that he generated these drawings and journal entries. In connection with this journal, defendant pled guilty in Claiborne Parish to possession of pornography involving juveniles, in violation of La. R.S. 14:81.1. Defendant was sentenced to an additional ten years at hard labor as a result of the Claiborne Parish conviction. Evidently, after serving his sentences for his three initial sex offense convictions and for the possession of child pornography conviction, defendant was released from prison in 2008. At that time, defendant was required to register as a sex offender for twenty-five years, with semi-annual updates. Defendant successfully registered in 2008 but then failed to appear [.¡thereafter. On February 12, 2010, defendant was arrested for failure to register as a sex offender. He- was convicted of failure to register as a sex offender, first offense, on September 24, 2010, in case number 10-1200, Twenty-Fourth JDC, Division “L,” and was sentenced to five years at hard labor.
During this second period of incarceration, the Sex Offender Assessment Panel (“SOAP”) convened to review defendant’s file in accordance with La. R.S. 15:560.2. This three-member panel is composed of (1) a qualified psychologist, (2) the secretary of the Department of Public Safety and Corrections or his designee, and (3) the warden or the deputy warden of the institution where the offender is located, a probation or parole officer with at least ten years of experience, or a retired law enforcement officer with at least five years of experience in investigating sex offenses. La. R.S. 15:560.2(B). By statute, this panel must review the files of every sex offender and child predator who is required to register and who i's to be released from custody for purposes of determining whether the offender is a “sexually violent predator” or a. “child sexual predator,” as defined by La. R.S. 15:560.1. La. R.S. 15:506.2(F). Subject to this panel’s review are presentence reports, prison records, medical and psychological records, information and data gathered by the staffs of the Board of Pardons and the Board of Parole, information provided by the convicted offender, the district attorney, and the assistant district attorney, and, any other information obtained by the boards or the Department of Public Safety and Corrections. La. R.S. 15:506.2(E).
After reviewing defendant’s file, the panel issued its recommendation that defendant' is a “child sexual predator” and forwarded that recommendation to the sentencing court, Division “L” of * the Twenty-Fourth JDC. As required by La. R.S. 15:560.2(1), Judge Rowan of Division “L” conducted a hearing on December 11, 2013, to review the SOAP recommendation. As the hearing convened, defendant Ragreed to stipulate to his status as a “child sexual predator.”[1] Judge Rowan reviewed the evidence to support the stipulation—including, it appears, the pornographic drawings and journal. entries defendant generated in prison—and conducted a colloquy with defendant during which he apprised him of the nature of the stipulation and ensured that his decision to stipulate was a knowing, intelligent, free and voluntary act. On Decem *1248 ber 11, 2013, defendant executed the stipulation acknowledging that he is a “child sexual predator” as defined in La. R.S. 15:560.1:
[A] person who has been convicted of a sex offense as defined in R.S. 15:541 and who is likely to engage in additional sex offenses against children, because he has a mental abnormality or condition which can be verified by a physician or psychologist, or because he has a history of committing crimes, wrongs, or acts involving sexually assaultive behavior or acts which indicate a lustful disposition toward children, as determined by the court upon receipt and review of relevant information including the recommendation by the sex offender assessment panel as provided for by this Chapter.
La. R.S. 15:560.1(1).
In accordance with this stipulation and the SOAP recommendation, the district court adjudicated defendant to be a “child sexual predator.” As a consequence of his adjudication as a “child sexual predator,” defendant became obligated to submit to supervision by the division of probation and parole, Department of Public Safety and Corrections, upon his release from incarceration for the duration of his natural life. La. R.S. 15:560.3(A). Under La. R.S. 15:560.3(A), defendant was further required, upon his release from prison, to:
(1) Register as a sex offender in accordance with the provisions of R.S. 15:542 et seq. and maintain such registration for the remainder of his natural life.
(2) Provide community notification in accordance with the provisions of R.S. 15:542 et seq. for the duration of his natural life.
(3) Submit to electronic monitoring pursuant to the provisions of R.S. 15:560.4 for the duration of his natural life.
(4)Report to the probation and parole officer when directed to do so.
| s(5) Not associate with persons known to be engaged in criminal activities or with persons known to have been convicted of a felony without written permission of his probation and parole officer.
(6) In all respects, conduct himself honorably, work diligently at a lawful occupation, and support his dependents, if any, to the best of his ability.
(7) Promptly and truthfully answer all inquiries directed to him by the probation and parole officer.
(8) Live and remain at liberty and refrain from engaging in any type of criminal conduct,
(9) Not have in his possession or control any firearms or dangerous weapons.
(10) Submit to available medical, psychiatric, or mental health examination and treatment for persons convicted of sex offenses when deemed appropriate and ordered to do so by the probation and parole officer.
(11) Defray the cost, or any portion thereof, of his supervision by making payments to the Department of Public Safety and Corrections in a sum and manner determined by the department, based on his ability to pay.
(12) Submit a residence plan for approval by the probation and parole officer.
(13) Submit himself to continued supervision, either in person or through remote monitoring, of all of the following Internet-related activities:
(a) The offender’s incoming and outgoing electronic mail and other Internet-based communications.
(b) The offender’s history of websites visited and the contact accessed.
*1249 (c) The periodic unannounced inspection of the contents of the offender’s computer or any other computerized device or portable media device and the removal of such information, computer, computer device, or portable media device to conduct a more thorough inspection.
La. R.S. 15:560.3(A).
On February 9, 2015, immediately prior to his full-term release from the Louisiana Department of Corrections, defendant met with a record analyst with the Department of Corrections who discussed with defendant his obligation to register | fias a sex offender. Defendant indicated that he understood his obligations under the law. When-asked where he intended to reside after his release, defendant provided an address in Bridge City, which is located in Jefferson Parish. When defendant stated that he would need a bus ticket to New Orleans, the Department of Corrections Inmate Banking Office provided defendant ■with a “J-Pay card”—which may be used like a debit card—with $44.50 credited to it, an amount which includes the cost of the highest-priced fare to New Orleans on the appointed day plus $20. Defendant did not suggest he had any concerns about his ability to pay the annual registration fee of $60, as set forth in La. R.S. 15:542(D).
Three days later, on February 12, 2015, the Department of Corrections released defendant from custody. From February 13, 2015 through February 27, 2015, defendant, a veteran of the United States Army, had continuous medical appointments and medical evaluations at the Veterans Administration (“VA”) hospital in New Orleans, including a February 13, 2015 visit to the Health Care for Homeless Veterans (“HCHV”) clinic when he presented to request a placement in the HCHV Transitional Housing Program and was referred to the VA’s Homeless Patient Aligned Care Teams (“H-PACT”) to obtain the required clearances to participate in the HCHV housing program. According to defendant’s VA medical records for the day following his release from incarceration:
Veteran stated he’s homeless and requested to be placed in the HCHV Transitional Housing Program. The Veteran denied s/a. Veteran reported no income. Veteran was referred to H-PACT for the required clearances; [sic] medical exam, psychological exam, chest x-ray, and toxicology labs. Vet was instructed to return to HCHV check-n upon completion of all clearances. Supportive counseling provided.
Over the next several days, defendant consistently reappeared at the VA hospital seeking both medical attention and the clearances necessary to make him eligible for VA housing. After his arrival in New Orleans, it appears from the 17record that defendant lived at the New Orleans Mission on Oretha Castle Haley Boulevard and that, at some point and for unknown reasons, he was “kick[ed] out” of the New Orleans Mission. At several points in the medical records, medical professionals document that defendant disclosed his recent release from prison and his history as a sex offender/pedophile. These records also reflect defendant indicated to medical staff that he had “trouble remembering or understanding medical provider’s advice” due to a head injury. Additionally, .the record reflects that, despite instructions to register within three business days of his full-term release from incarceration, defendant made no effort to register in Jefferson Parish, in Orleans Parish, or in any other place in the state. On February 27, 2015, after attending several appointments at the VA hospital that day and reiterating his desire for housing assistance— though also stating that he did not want transitional housing anymore, despite having notified VA staff that the New Orleans *1250 Mission was no longer available to him— defendant.was arrested on a warrant for failure to register, second offense, in violation of La. R.S. 15:542.
Following defendant’s arrest, the State filed a motion to hold defendant without bond. At a contradictory hearing on the State’s motion, the State introduced defendant’s pornographic drawings and journal entries, and Detective Christopher Vado of the Jefferson Parish Sheriffs Office testified that, during the course of his investigation of the instant offense, defendant admitted to generating these illicit materials, In describing these materials during argument, the State highlighted several disturbing portions of the materials:
In these documents, there are pages, page after page after page after page of journals .that Mr. Mouton has generated and what appear in those pages are different scenarios where Mr. Mouton has essentially said, depending on these different situations, what’s the best way to kidnap, rape and mutilate children and then to murder them. One that stood out to me is, if you’re at Toys “R” Us, or at a different toy store and you encounter a child, who, you know, you find incredibly attractive, who’s like 13 or 14, what’s the best way under that situation to kidnap, rape and murder these children. |8He provides a list of materials that you would need, duct tape, for example, an ID badge to persuade this child that you are a person who works at this facility, and then he provides step-by-step instructions on what you should do first, second and third, in order to be in a situation where you can kidnap, rape and murder these children. -
There are many other scenarios that he provides. If you’re at a T ball game, for example, what’s the best way to do it there., If you want to kidnap, rape and murder children at a school bus stop, what’s the best way to go about it. Your Honor is going to see that for yourself. It appears in these documents. One in particular I’m going to flag for the Court, so that you can find it and read it for yourself, is the school bus stop scenario that he created, and I put a page flag on there for the. Court to review.
* H< *
Your Honor, what I would show the Court, not only—I think the Court has seen these drawings and how graphic— how graphic they are. The first one on the top that shows a child being dissected and sexually mutilated, what I want to show the Court is that the. page that follows this picture, this is what was on the back of it, and there’s portions of it that are in code, but there’s something else that’s not in code. It says the person’s name, Tonya, and it also provides a number next to it, and the number next to it is the person’s age. And the age of this person on ;the back is 14, and it also says “Terminated.” The age on the back of this picture is 13. The age on the back -of this picture is 12. This one is 12 1/2. This one is 12.1 could go on.
When questioned as to whether or not anything of' concern was found in defendant’s possession at the time of his arrest, Detective Vado testified that a search of defendant’s pockets revealed “a bag with some condoms and a little bottle of lubrica-. tion that was with the condoms.” After reviewing the drawings and journal entries and considering the evidence and testimony, the court granted the State’s motion.

The Trial

On May 24, 2016, Judge Rowan—who also presided over defendant’s first failure to register conviction and over defendant’s SOAP-recommended “child sexual predator” adjudication—began defendant’s jury trial in the instant matter.
In the State’s case-in-chief, Amanda Sagely, the record analyst with the Louisi *1251 ana Department of Corrections who met with defendant on February 9, |fl2015, just before his - full-term release from the Department of Corrections, testified, about that meeting and identified defendant at trial. Ms. Sagely explained that she discussed with defendant his obligation to register as a sex offender and provided defendant with a complete copy of the Louisiana Sex Offender Registration Laws under La. R.S. 15:542 and 15:542.1. She also personally reviewed with defendant in its entirety a form called the “Louisiana Sex Offender Registration and Notification Requirements Upon Release From Confinement by the Department of Public Safety and Corrections.” Ms. Sagely testified that this form explicitly explained to defendant (1) that he has an obligation to register, even if he is homeless, (2) that he must report in person within three business days after his release from confinement, (3) that he must register with the sheriff in the parish where he resides or where he lives homeless/without a fixed residence, and (4) that he must register in the parish he provided as his residence, unless he registered somewhere else. According to Ms. Sagely, deféndant seemed to understand his obligations when she went over them with him.
The State introduced into evidence the form itself which defendant signed, indicating that he understood his obligations. When Ms. Sagely asked defendant, in accordance with La. R.S. 15:542(0(1) and (2), where he intended to reside after his release, defendant provided Ms. Sagely with an address in Bridge City, which is located in Jefferson Parish.- There is no evidence in the record of defendant’s connection, if any, to this address. Defendant’s medical records reflect that defendant’s parents and his brother are deceased, and there is no indication defendant has any other living relatives. According to Ms. Sagely, when defendant indicated he would need a bus ticket to New Orleans, defendant received sufficient funds to buy a bus ticket to New Orleans, as well as an additional $20. Ms. Sagely testified she did -not talk to defendant about getting from New Orleans to Jefferson Parish, the parish in which defendant indicated he would reside. Moreover, |inalthough Ms. Sagely and defendant discussed the funds that might be required to register as a sex-offender, they did not discuss how defendant would acquire these funds ■ because defendant “didn’t express any concerns” to her about producing the funds. Ms. Sagely testified that the Department of Corrections released defendant from custody three'days later, on February 12,2015.
Deputy Patrick Smith, Assistant Commander for Fingerprint Identification in the AFIS Section for the Jefferson Parish Sheriffs Office (“JPSO”), testified at trial that defendant never appeared in Jefferson Parish to register. Based on his review of the national sex offender registration database and Orleans Parish’s sex offender registration records, Deputy Smith' explained that he could also confirm that defendant has not registered in any other parish or place since defendant’s release from custody. Both the State and defense counsel questioned Deputy Smith concerning the obstacles an indigent person would face in' seeking to comply with the registration and notification requirements of La. R.S. 15:542 and 15:542.1. Deputy Smith testified that the JPSO seeks to make accommodations for those who have transportation difficulties or physical ailments that hamper their appearance at the JPSO:
Q. ’ Do you make special arrangements so that people who have difficulties coming to you, whether it’s transportation, physical ailments, do you make accommodations for them to help them register?
A. Yes we do.
*1252 Q. Tell me about some of those?
A. We will reschedule our meeting with them if there’s a time issue, we’ll provide transportation to them if they’re having difficulty getting to them—getting to us. We’ve—we’ve actually also been going and met with them, to go over their papers and to register them.
On cross examination, Deputy Smith testified that, within three business days of an offender’s release from custody, the offender must appear at JPSO and must submit two forms of proof of residence for each residence they provide. |nAlthough the JPSO will accept a state-issued identification card as one of the two required proofs of residence, the identification card must be current and valid. Presumably, it also must reflect the address of the offender’s current residence. If an offender, such as defendant, does not have a current and valid state identification card, Deputy Smith testified that the offender would have to obtain one from a different state agency. Deputy Smith testified that an offender is also responsible for paying a $60 annual fee for registering. Deputy Smith agreed that this fee “can’t be waiva-ble.”
Deputy Smith further testified that an offender must pay the costs of fulfilling the notification requirements of La. R.S. 15:542.1, which includes the cost of placing an advertisement in the newspaper and the cost of producing and mailing postcards to every residence within three-tenths of a mile from the place where the offender resides. Deputy Smith testified that the newspaper ad typically costs $193.50 and that the cost of producing and mailing out the notification postcards typically runs between $100 and $1000 depending on how many other residences are within the vicinity of the offender’s residence. To Deputy Smith’s knowledge, defendant never contacted Jefferson Parish, Orleans Parish, or anywhere else seeking help in order to comply with the registration requirements. Deputy Smith further testified that, if defendant needed help getting a state-issued identification card, that JPSO would have helped him obtain one: “Yes, we will help him, we’ll assist him, tell ’em what they need, whether they need to go to get it.”
With respect to paying the annual fee for registration and the costs associated with fulfilling the notification requirement, Deputy Smith testified that “we will work with them, we will assists [sic] them, we will, you know, see whatever remedy we can come up with to kind of assists [sic] them with making those fees.” Although Deputy Smith agreed with the State that such arrangements 112happen “frequently,” he testified that, to his knowledge, defendant did not do anything to ask for help with these fees.
Detective David Ray, a criminal investigator with JPSO’s Detective Bureau, was the case officer in the instant matter. At trial, Detective Ray testified that February 26, 2015, fourteen days after defendant’s February 12, 2015 release from the custody of the Department of Corrections, he received notice from JPSO Sex Offender Registration that defendant had failed to timely appear after his release. After verifying that defendant had convictions which required him to register as a sex offender, Detective Ray conducted a diligent search of Louisiana and national sex offender registries and verified that defendant had not registered in Jefferson Parish or anywhere else in the country. Detective Ray also examined all available law enforcement databases to ensure that defendant was not incarcerated somewhere. Thereafter, Detective Ray sought and obtained an arrest warrant for defendant for failing to register as a sex offender. After enlisting the aid of JPSO’s Intelligence Section which is engaged in a joint effort *1253 with the U.S. Marshals Service, defendant was detained on February 27, 2015, in the 1800 block of Gravier, one block from the Southeast Louisiana VA Hospital. Although Detective Ray was not entirely sure about how law enforcement located defendant so quickly, he suggested that a member of the Joint Task Force with the U.S. Marshal Service and the JPSO Intelligence Division located defendant by accessing the VA Hospital’s appointment calendar book.
Defendant’s medical records, which the district court admitted into evidence as State’s Exhibit 9 and Defense Exhibit 2, reflect that defendant received ongoing outpatient medical treatment at the VA Hospital from February 13, 2015, the day after defendant’s release, through February 27, 2015, the day of his arrest, with an outpatient procedure scheduled for March 5, 2015. The VA medical records also reflect that, during the fifteen-day period between his release from prison and the | ^arrest on the instant offense, defendant was diligently engaged in the process of obtaining clearances to be eligible for VA housing.
The State also presented the testimony of Dona Quintanilla, a latent print examiner with JPSO, who was tendered and accepted as an expert in the field of fingerprint comparison and identification. Ms. Quintanilla compared fingerprints she took of defendant on the day of her testimony at trial, which the State entered into evidence as State’s Exhibit 1, and fingerprints related to a certified conviction from 1990 in the name of “Tommy L. Mouton” in case number 90-714 for the crimes of aggravated oral sexual battery, indecent behavior with a juvenile, and sexual battery on a child younger than eighteen, which the State offered and the district court admitted as State’s Exhibit 2. After examining the fingerprints, Ms. Quintanilla identified the defendant’s left thumbprint on State’s Exhibit 1 with the left thumbprint on State’s Exhibit 2. Ms. Quintanilla testified that, in her expert opinion, defendant is the' one and the same Tommy Mouton who had these three prior sexual offense convictions in Jefferson Parish. Ms. Quintanilla also compared State’s Exhibit 1 with a certified conviction from 2010 in the name of Tommy L. Mouton for failure to register as a sex offender in case number 10-1200, which the State entered and the district court admitted as State’s Exhibit 3. Ms. Quintanilla identified defendant’s left thumbprint in State’s Exhibit 1 with the left thumbprint in State’s Exhibit 3, testifying, that in her expert opinion, there is no doubt that defendant is the one and the same Tommy Mouton who had a prior conviction for failure to register as a sex offender.
After the State rested, defendant called a single witness, Keith Lobrono, an investigator with the Public Defender’s Office. Through Mr. Lobrono, defense counsel offered and the district court admitted photographs of defendant’s belongings at the time he was detained. The photographs reflect that, at the timé of his arrest, defendant possessed the following personal property: shoes, socks, | upants, shirt, miscellaneous loose papers, personal hygiene items, a cane, head phones, two social security cards issued to defendant, defendant’s birth certificate, a state identification card that expired in 2007, shoe laces, a glucose meter, and over a dozen prescription medicines. Defense counsel also offered and the district court admitted Defense Exhibit 4, reflecting that the Department of Corrections credited defendant $44.50 upon his release.
DISCUSSION

Assignment of Error One

In his first assignment of error, defendant argues that the district court erred in denying his motion for new trial because *1254 the State presented insufficient evidence that defendant possessed criminal intent. Defendant argues, that the State failed to prove anything more than that defendant was poor, homeless, ill, and physically and financially incapable of fulfilling the strenuous registration requirements in the short period of time afforded him.
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded. La. C.Cr.P. art. 851(A). The decision on a motion for a new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Delagardelle, 06-898 (La.App. 5 Cir. 4/11/07), 957 So.2d 825, 829, writ denied, 07-1067 (La. 11/21/07), 967 So.2d 1154. On motion of the defendant, the court shall grant a new trial whenever the verdict is contrary to the law and the evidence. La. C.Cr.P. art. 851(B)(1). When a motion for a new trial is based on the verdict being contrary to the law and the evidence, there is nothing for review on appeal. State v. Condley, 04-1349 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 888, writ denied, 05-1760 (La. 2/10/06), 924 So.2d 163. However, both the Louisiana Supreme Court and this Court have 11Raddressed the constitutional issue of the sufficiency of the evidence under this circumstance. Id. Therefore, this Court can address on review the denial of defendant’s motion for a new trial based on the sufficiency of the evidence.
The question of sufficiency of the evidence is properly raised in the trial court by a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821. State v. Bazley, 09-358 (La.App. 5 Cir. 1/11/11), 60 So.3d 7, 18, writ denied, 11-282 (La. 6/17/11), 63 So.3d 1039, Here, defendant filed both a motion for. new trial and a motion for post-verdict judgment of acquittal challenging the-sufficiency of the evidence. Thus/ this assignment of error is properly before this Court on appeal.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a' mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 574 (1979); State v. Neal, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002). This directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La. 2/5/10), 27 So.3d 297. This deference to the fact-finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. Indeed, a reviewing court errs by substituting its appreciation of the evidence and the credibility of witnesses for that of the fact-finder and overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See State v. Calloway, 07-2306 (La. 1/21/09), 1 So.3d 417, 418. As a result, under the Jackson standard, a review of a criminal conviction record for sufficiency of evidence does not require the court to ask whether it believes that the evidence at the trial, established guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240. Rather, the reviewing court is required to consider the whole record and determine whether any *1255 rational trier of fact would have found guilt beyond a reasonable doubt. Id.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey, 15 So.3d at 202. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. See State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La. 11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La. 1/30/09), 999 So.2d 745.
Defendant was convicted of failure to register as a sex offender, second offense, in violation of La. R.S. 15:542. In order to support a conviction of La. R.S. 15:542, the State must prove (1) that defendant was convicted of a “sex offense” as defined in La. R.S. 15:541, (2) that he resided in Louisiana for the period during which he was required to register, (3) that he was previously convicted of the erime of failure to register as a sex offender (first offense), and (4) that he failed to-register within the requisite time allotted for registration. La. R.S. 15:542; State v. Flores, 14-642 (La. App. 5 Cir. 12/23/14), 167 So.3d 801, 806. La. R.S. 15:542(C)(2) requires that, unless an earlier time period is specified Jjjpursuant to La. R.S. 15:542(0(1), every offender, once released, must appear in person within three business days of “establishing residence in Louisiana” to register with the appropriate law enforcement agencies. Pursuant to La. R.S. 15:541(22),
“Residence” means a dwelling where an offender regularly resides, regardless of the number of days or nights spent there. For those offenders who lack a fixed abode or dwelling, “residence” shall include the area, or place where the offender habitually lives, including but not limited to a rural area with no address or a shelter.
After reviewing the record, we find the State established every element of the charged offense. First, the State established, through Ms. Quintanilla’s testimony and the admission of defendant’s fingerprints and of the certified conviction for these crimes, that defendant was previously convicted of aggravated oral sexual battery, indecent behavior with a juvenile, and sexual battery of a child younger than eighteen, all of which are defined as “sex offenses” in La. R.S. 15:541. Second, although defendant was homeless at the time of his arrest, there is no dispute that he “resided” in Louisiana upon his release, pursuant to the definition of “residence” set forth in La. R.S. 15:541(22). Third, through Ms. Quintanilla’s testimony and the admission of defendant’s fingerprints and- of the certified conviction for this crime,, the State established that defendant had a previous conviction for failure to register as a sex offender. Finally, based on the testimony of Detective Ray and Deputy Smith, the State established that defendant did not register as a sex offender either .within the three business days allotted by La. R.S. 15:542(C)(2) or at any time prior to his arrest, fifteen days after his release.
Defendant argues that the district court abused its discretion' in denying his motion for new trial and post-verdict judgment of acquittal' because the State failed to prove he had the requisite criminal intent necessary for a conviction under La. R.S. 15:542. As an initial matter, defendant based his motion for new trial on the hsargument that that the jury’s verdict *1256 constituted a violation of the Fourteenth Amendment of-the United States Constitution because it was impossible for defendant to ■ comply with the law due to his indigency. Defendant did not argue at any point that the State failed to show he had “criminal intent.” Nevertheless, in an abundance of caution, we will address the merits of this assignment of error.
Under La. R.S, 14:8, the Legislature has defined “criminal conduct” as
(1) An act or a failure to act that produces criminal consequences, and which is combined with criminal intent; or
(2) A mere act or failure to act that produces criminal consequences, where there is no requirement of criminal intent; or
(3) Criminal negligence that produces criminal consequences.
This statute expressly recognizes that a crime may be enacted where there is no requirement of criminal intent when there is a failure to act which produces criminal consequences; State v. Terrell, 352 So.2d 220 (La. 1977). The Legislature determined that criminal consequences should attach to a sex offender’s failure to comply with Louisiana’s sex offender registration law, even in the absence of criminal intent. State v. Watts, 09-0912 (La.App. 4 Cir. 6/16/10), 41 So.3d 625, 637-639, writ denied, 10-1685 (La. 1/28/11), 56 So.3d 966 (finding La. R.S. 15:542 constitutional even though it does not contain the element of criminal intent). Because La. R.S. 15:542 does not contain the element of criminal intent, we find the district court did not abuse its discretion in denying defendant’s motion for new trial and post-verdict judgment of acquittal grounded on the basis that the State failed to prove the element of criminal intent. Accordingly, we find no merit in defendant’s first assignment of error.

Assignment of Error Two

In his second assignment of error, defendant argues that the district court erred in imposing a constitutionally excessive sentence. Defendant contends that he was essentially sentenced to a debtors’ prison for his failure to register. He hfldaims that there was nothing particularly heinous or offensive about his crime, and to impose such a harsh penalty without mentioning any mitigating factors fails to show due consideration for the sentence imposed. Accordingly, he argues that this Court should vacate his sentence and should remand his case for resentencing.
Defendant filed a motion to reconsider sentence wherein he argued that his sentence was constitutionally excessive. In his motion to reconsider sentence, defendant did not claim that the trial judge failed to comply with La. C.Cr.P. art. 894.1 or failed -to consider mitigating factors in imposing his twenty year sentence.[2] Where the defendant’s motion to reconsider sentence alleges mere excessiveness of sentence, the reviewing court is limited to only a review of whether the sentence is constitutionally excessive. La. C.Cr.P. art. 881.1; State v. Mims, 619 So.2d 1059, 1059-60 (La. 1993). Accordingly, due to defendant’s bare claim of excessiveness of sentence in his motion, defendant’s sentence is limited to a review for constitutional excessiveness.
In reviewing a sentence for constitutional excessiveness, an appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of jus *1257 tice. State v. Lobato, 603 So.2d 739, 751 (La. 1992); State v. Ross, 13-924 (La.App. 5 Cir. 5/28/14), 142 So.3d 327, 333. A trial judge has broad sentencing discretion because he or she remains in the best position to assess the aggravating and mitigating circumstances presented by each case. State v. Cook, 95-2784 (La. 5/31/96), 674 So.2d 957, 958, cert. denied, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996). On review, the issue is whether the trial judge abused his great discretion, not whether another sentence might have been more appropriate. Ross, 142 So.3d at 333; State v. Pearson, 07-332 (La.App. 5 Cir. 12/27/07), 975 So.2d 646, 656.
12nDefendant was convicted of failure to register as a sex offender, second offense. La. R.S. 15:542.1.4(A) provides, in pertinent part:
(1) A person who fails to timely register, fails to timely provide any information required by the provisions of this Chapter, fails to timely and periodically renew and update registration as required by the provisions of this Chapter, fails to timely provide proof of residence, fails to timely provide notification of change of address or - other registration information, or fails to provide community notification as required by the provisions of this Chapter, and a person who knowingly provides false information as provided in R.S. 15:542(C)(3), shall, upon first conviction, be fined not more than one thousand dollars and imprisoned with hard labor for not less than two years nor more than ten years without benefit of parole, probation, or suspension of sentence.
(2) Upon second or subsequent convictions, the offender shall be fined three thousand dollars and imprisoned with hard labor for not less than five years nor more than twenty years without benefit of parole, probation, or suspension of sentence.
The sentencing transcript reflects that the district court imposed the maximum sentence of twenty years at hard labor without the benefit of probation, parole, or suspension of sentence.'The imposition of a sentence, although within the statutory limits, may still violate a defendant’s constitutional right against excessive punishment. State v. Scie, 13-634 (La. App. 5 Cir. 1/15/14), 134 So.3d 9, 12. In considering whether the district court abused its discretion in sentencing a defendant, a reviewing court should consider (1) the nature of the crime, (2) the nature and background of the offender, and (3) the sentence imposed for similar crimes by the same court and other courts. State v. Brown, 04-230 (La.App. 5 Cir. 7/27/04), 880 So.2d 899, 902. Absent a showing of manifest abuse of that discretion, the appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La. 5/16/00), 769 So.2d 1158, 1167.
In sentencing defendant, the district court provided the following reasoning:
I remembered the first offense in this particular case. And I also remember the hearing that we did. We did a hearing to determine 'if you were an individual that could commit another sexual assault.
Based on the evidence that was produced during that hearing, it was the conclusion, even though you did stipulate to it, the Court was |21 able to view documents that you had prepared while you were in prison, and other things.
They were the types of things that, I believe, this is my thinking, because as the sentencing Judge, I have to consider all the perimeters [sic],, including your age, whether I think this would happen again, all of these things in consideration before I give you your sentence.
And you were told, when you were here that day, that they would monitor *1258 you, because of what was uncovered during that hearing. You were.told that they would monitor you, and you needed to register—if and when you were released. You were released, and during that period of time, you didn’t try to register; you didn’t try at all. They had to go find you. Okay? It wasn’t like you went in and said “I can’t do it, I don’t have the money, I need help[,”] whatever it was. You didn’t do it. They literally had to do. a man-hunt to find you. Okay? So that’s my problem with that. But you sought no help; you didn’t try to do anything to lessen what your responsibilities were, because you were warned.
Therefore, based on the statute, the Court has considered the sentencing guidelines in the Code of Criminal Procedure Article 894.1, and I find, A, that when you’ve been convicted of a felony, that A' 1, there is an undue risk that during the period—if there were a suspended sentence or probation at any time, that you would commit another crime. Two, that the defendant is. in , need of a correctional treatment or custodial environment that can only be provided effectively by his commitment to an institution, and that any lesser sentence would deprecate [sic] the seriousness of—the defendant’s crime.
Defendant was convicted and sentenced for his second offense of failure to register ás a sex offender in violation of La. R.S. 15:542. Concerning the nature of this crime, this Court has previously held that a defendant’s failure to notify the community of his status as a convicted sex offender serves to increase the risk to public safety. State v. Muth, 13-1003 (La.App. 5 Cir. 6/24/14), 145 So.3d 495, 500; see also State ex rel. Olivieri v. State, 00-0172 (La. 2/21/01), 779 So.2d 735, 747 (“It is clear that the laws were enacted to protect communities, aid police in their investigation of sex offenders, and enable quick apprehension of sex offenders. These enactments were further founded on the findings of the Legislature that this legislation was of paramount governmental interest because: (1) sex offenders pose a high risk of engaging in sex offenses, (2) sex offenders have a high incidence of recidivism, and (3) unless ■ there was registration and [^community notification, sex offenders could remain hidden and thereby increase the risk to public safety.”).
As to the nature and background of the offender in this case, the record indicates that defendant’s underlying criminal offenses involved felony convictions for aggravated oral sexual battery, indecent behavior with a juvenile, and sexual battery of a child younger than eighteen. Further, the record reflects that, in accordance with the SOAP recommendation, defendant also previously stipulated to being a “child sexual predator”—that is, “a person who has been convicted of a sex offense as defined in R.S. 15:541 and who is likely to engage in additional sex offenses against children. ...” La. R.S. 15:560.1(1). In providing reasoning for his sentence, the trial judge explicitly referenced the December 2013 hearing, at which the judge accepted defendant’s stipulation that he is a “child sexual predator" and reviewed “documents [defendant] had prepared while [he] was in prison, and other things.” -The documents to which the district court refers appear to be over the one hundred fifty pages of graphic sexual drawings of children and journal entries providing explicit step-by-step instructions on how to isolate, to kidnap, to rape, and to murder children in various situations (e.g., at an elementary school, at a laundry mat, at a grocery store, at the mall, at a “ball game-park,” at a water park, etc.), which the State offered and the district court admitted at the hearing on the State’s motion to hold defendant without bond. As highlighted by the district court at sentencing, defendant had a previous conviction of failure to register as *1259 a sex offender, first offense. Defendant completed the five year sentence associated with this conviction only fifteen days prior to his arrest for the instant second offense of failure to register as a sex offender.
Our review of the jurisprudence reveals only two Louisiana cases in which defendants who received the maximum sentence for failure to register, second offense, have appealed their sentences as constitutionally excessive. In State v. 23Aulph, 47,966 (La.App. 2 Cir. 5/22/13), 114 So.3d 610, 616, the Second Circuit Court of Appeal determined that the district court’s imposition of. the twenty-year maximum sentence was not constitutionally excessive, given the defendant’s extensive criminal history, his sexual contact with at least five juvenile victims, his lack of remorse, and his failure to seek help. Similarly, in State v. Young, 46,575 (La.App. 2 Cir. 9/21/11), 73 So.3d 473, 478-79, writ denied, 11-2304 (La. 3/9/12), 84 So.3d 550, the Second Circuit found the district court did not abuse its discretion in imposing the maximum twenty-year sentence, citing the defendant’s three-decade continuous criminal history, his failure to benefit from substantial leniency in sentencing and probation opportunities, and his continued pattern of escaping supervision.
It appears that both in Aulph and in Young the Second Circuit had the benefit of developed records concerning the defendants’ past crimes and errant behavior. Conversely, in the present case, the record contains sparse details about defendant’s three prior sexual offenses, except that these offenses' occurred in 1990.[3] Moreover, the record does not provide any details regarding defendant’s first conviction for failure to register other than that he was convicted in 2010. Nevertheless, the record in this case does contain the disturbing images and writings which formed the basis for defendant’s possession of child pornography conviction. Given the important public interest in monitoring sex offenders and defendant’s background, his prior conviction for fading to register, his “child sexual predator” adjudication, his three initial sexual offense conviction's, his conviction for possession of child pornography, and the troubling nature of the journal entries and drawings defendant produced which formed the basis for that child pornography conviction, we cannot find the district court ' abused its Indiscretion in sentencing defendant to the maximum twenty-year sentence for his second offense of failure to register in Violation of La. R.S. 15:542.
Accordingly, We find no merit in defendant’s second assignment of error.
ERROR PATENT REVIEW
The record was reviewed for errors patent, according, to La. C.Cr.P. art. 920, State v. Oliveaux, 312 So.2d 337 (La. 1975), and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir. 1990). Our review reveals that there are errors patent requiring corrective action.
Our examination ■ of the record reveals inconsistencies, between the uniform commitment order, commitment, and sentencing transcript. .First, in the transcript, the trial court imposed defendant’s twenty-year sentence without the benefits of probation, parole, or suspension of sentence; *1260 however, the uniform commitment order and commitment are silent on this issue. Second, although the commitment reflects that defendant was given a proper advisal of the time period for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8, the transcript indicates that the trial court failed to advise defendant of the post-conviction relief period. The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La. 1983). Accordingly, we remand this matter and order that the commitment and the uniform commitment order be corrected to reflect the proper sentence handed down by the court—that is, twenty years at hard labor without the benefits of probation, parole, or suspension of sentence! Further, we direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected commitment and uniform commitment order to the officer in charge' of the institution to which defendant has been sentenced and the Department of Corrections’ legal department.
Concerning the district court’s failure to advise defendant of the time period within which defendant may seek post-conviction relief under La. C.Cr.P. art. 25930.8, in the past, this Court has corrected this error patent by way of its opinion. See State v. Do, 13-290 (La.App. 5 Cir. 11/19/13), 130 So.3d 377, 394, writ denied, 13-2907 (La. 6/20/14), 141 So.3d 285; State v. Ramsey, 10-333 (La.App. 5 Cir. 1/25/11), 60 So.3d 36, 42; State v. Davenport; 08-463 (La. App. 5 Cir. 11/25/08), 2 So.3d 445, 451, writ denied, 09-158 (La. 10/16/09), 19 So.3d 473 Accordingly, we advise defendant by way of this opinion that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
Finally, the district court failed to impose the mandatory fine required by La. R.S. 15:542 and La. R.S. 15:542.1.4. La. R.S. 15:542.1.4 provides that upon a second conviction for failure to register as a sex offender, “the offender shall be fined three thousand dollars.” An appellate court has the authority under La. C.Cr.P. art. 882 to correct an illegally lenient sentence at any time, even if neither the defendant nor the State raised the issue. State v. Campbell, 08-1226 (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, 1081, writ denied, 09-1385 (La. 2/12/10), 27 So.3d 842. This authority is permissive rather than mandatory. State v. Horton, 09-250 (La.App. 5 Cir. 10/27/09), 28 So.3d 370, 376. This Court has used that authority to notice the failure of the trial court to impose a mandatory fine and the authority to remand the matter to the trial court for imposition of a mandatory fine. State v. Shaw, 12-686 (La.App. 5 Cir. 1/16/13), 108 So.3d 1189, 1198. However, often in indigent defendant matters, this Court has decided not to exercise this authority, Horton, 28 So.3d at 376. In the present case, the Louisiana Appellate Project represents defendant. Given defendant’s indigent status, we decline to exercise our authority to order the district court to impose the mandatory fine on remand. See State v. England, 09-746 (La. App. 5 Cir. 3/9/10), 38 So.3d 383, 391.
_J¿gDECREE
For the foregoing reasons, we affirm defendant’s conviction for failure to register as a sex offender, second offense, in violation of La. R.S. 15:542, and his sentence of twenty years imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence. We remand this matter for correction of the commitment and the uniform commitment order to reflect that defendant’s sentence is to be served without benefit of probation, parole, or suspension of sentence.
*1261 CONVICTION AND SENTENCE AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT
WICKER, J., CONCURS WITH REASONS

. Under La. R.S. 15:560.2(1), the State must prove by clear and convincing evidence at a contradictory hearing that the offender is a "child sexual predator.”

. Although defendant’s motion to reconsider did not concern this allegation, the record reflects that the district court considered the factors enumerated in La. C.Cr.P. art, 894.1 when sentencing defendant,

. The State argued at sentencing that defendant also has a conviction for violating .La. R.S. 14:81.1 (pornography involving juveniles). However, the State did not introduce any evidence of this conviction. The only support for this assertion in the record comes from the arrest warrant for the instant second offense for failure to register in which the officer attests to discovering this 1994 conviction during his investigation. Allegedly, this conviction arises out of the drawings and journal entries defendant produced while in prison, ■